IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTH AMERICAN LUBRICANTS COMPANY, | |
| Plaintiff, | No. CIV S-11-1284 KJM GGH |
| v. | |
| SHANE A. TERRY, et al., | |
| Defendants. | ORDER |

Presently before the court is defendants' motion to compel further initial disclosures and further response to defendants' Interrogatory No. 1, which was filed on October 27, 2011 and came on regularly for hearing on November 17, 2011. (Dkt. No. 31.)

On November 10, 2011, for reasons discussed below, defendants filed their statement regarding the discovery disagreement pursuant to E.D. Cal. L.R. 251(d). (Dkt. No. 33.) Plaintiff failed to meaningfully participate in the creation of the joint statement regarding the discovery disagreement and failed to file its own timely statement. Instead, plaintiff filed an opposition brief and declaration six days after the joint statement was due (see E.D. Cal. L.R. 251(a)) and one day before the hearing on this matter. (Dkt. No. 36.) Accordingly, plaintiff's opposition will be stricken and disregarded.

1

1  At the hearing, Matthew Ruggles and Eric Ostrem appeared on behalf of
2 defendants.  Plaintiff's counsel failed to appear at the hearing.  Having reviewed the papers in
3 support of the motion and the court's record in this matter, and for good cause appearing, the
4 court now issues the following order.
5 BACKGROUND
6  Facts Giving Rise to the Litigation
7  The background facts are taken from the operative complaint filed on May 13,
8 2011. (Dkt. No. 1.)  Plaintiff North American Lubricants Company ("NALC") is a manufacturer
9 and wholesale distributor of lubricating oils, primarily passenger car motor oil in the "do it for
10 me" market.  (See Complaint, Dkt. No. 1 ["Compl."] ¶ 31.)  NALC services its customers
11 through a network of authorized blenders, distributors and/or dealers of its products and services.
12 (Compl. ¶ 44.)  These customers market, sell, install, and maintain plaintiff's products for their
13 customers, but these entities may also market, sell, install, and maintain products manufactured
14 by plaintiff's competitors.  (Id.)
15  Defendant Shane Terry was the president of NALC from November 2005 until he
16 resigned on January 26, 2011 and formed a new company, defendant United Petroleum
17 Company, LLC ("UPC"), which offers products and/or services that compete with NALC.
18 (Compl. ¶¶ 8, 45, 45, 47, 49.)  At least two of NALC's former national account sales managers,
19 defendants Goldman and Hensing, also joined UPC in the first half of 2011.  (Compl. ¶¶ 10, 11.)
20 The remaining defendants are other executives, members, and/or directors of UPC.  (Compl. ¶¶
21 13-16.)
22  In this action, NALC alleges that defendants committed a variety of wrongful
23 conduct, including defendants Terry, Goldman, and Hensing accessing and transmitting NALC's
24 confidential information to one or more of defendants before leaving their employment with
25 NALC; soliciting NALC's employees and customers; using NALC's customer contact
26 information, customer account information, and sales and pricing data; and using logos,

2

advertising, and trade dress for UPC products that are confusingly similar to NALC's trademark and advertising. (Compl. ¶¶ 47-48, 59, 99-101, 109, 116.) NALC asserts the following causes of action: (1) violation of the Computer Fraud and Abuse Act; (2) violation of the Arizona Trade Secrets Act; (3) misappropriation/conversion; (4) breach of contract; (5) breach of implied covenant of good faith and fair dealing; (6) tortious interference with contract; (7) unfair competition (Lanham Act sections 32 and 43(A)); (8) unfair competition (common law); (9) unfair business practices; and (10) breach of fiduciary duty by corporate officers/managers. (Compl. ¶¶ 94-172.)

<u>Facts Related to the Discovery Dispute/Meet-and-Confer Efforts</u>

On October 27, 2011, defendants filed the instant motion to compel. Defendants seek an order compelling NALC to supplement its initial disclosures and serve an amended response to Defendants' Interrogatory No. 1. Defendants also request an award of sanctions in the amount of defendants' attorneys' fees related to bringing this motion.

The parties' meet-and-confer efforts were detailed in defendants' statement and the Declaration of Eric R. Ostrem. (Dkt. Nos. 33, 34.) After NALC served its response to defendants' Interrogatory No. 1 on October 4, 2011, defendants sent a detailed letter to NALC's counsel on October 13, 2011, explaining the alleged deficiencies in NALC's response and requesting that NALC amend its response. (<u>See</u> Declaration of Eric R. Ostrem, Dkt. No. 34 ["Ostrem Decl."] ¶¶ 3-4, Ex. B.) NALC did not respond to this letter. (Ostrem Decl. ¶ 4.) Despite having agreed to exchange initial disclosures on September 28, 2011, NALC did not do so until October 21, 2011. (Ostrem Decl. ¶¶ 5-6, Ex. C.) After reviewing the disclosures, on October 24, 2011, defendants again sent NALC a detailed letter outlining the alleged deficiencies in the initial disclosures and requesting a response from NALC by close of business October 27, 2011 with respect to both the initial disclosures and Interrogatory No. 1. (Ostrem Decl. ¶ 7, Ex. D.) Defendants again received no response from NALC, prompting them to file a Notice of Motion to Compel after close of business on October 27, 2011. (Ostrem Decl. ¶ 8.)

It was only after the motion to compel was noticed that NALC responded via e-mail and a telephonic conference was scheduled for November 2, 2011. (Ostrem Decl. ¶¶ 8-9, Ex. E.) During the phone conference, NALC's counsel agreed to review NALC's responses and disclosures and get back to defendants regarding whether NALC would amend or supplement them. Defendants' counsel reminded NALC's counsel that the joint statement regarding the discovery dispute was due on November 10, 2011. (Ostrem Decl. ¶ 9, Ex. F.) On November 7, 2011, after hearing nothing further from NALC's counsel, defendants e-mailed NALC's counsel asking for a response and reminding her of the upcoming deadline. (Ostrem Decl. ¶ 10, Ex. G.) On November 8, 2011, defendants' counsel followed up with two phone calls, received no answer, and left voicemails. That evening, he sent NALC's counsel another e-mail, to which she responded that she had been traveling and would respond the following day. (Ostrem Decl. ¶ 11, Exs. H and I.)

On November 9, 2011, NALC's counsel sent a letter to defendants' counsel at 4:17 p.m. outlining NALC's position on the discovery dispute. Defendants' counsel then called NALC's counsel, but the parties were unable to resolve their disagreement during the teleconference or in the course of further e-mail correspondence. (Ostrem Decl. ¶ 12, Exs. J, K, and L.)

On November 10, 2011, the day the joint statement was due, the parties exchanged early drafts of the joint statement. Defendants' counsel had informed NALC's counsel that he needed to leave the office at 6 p.m. At 4:51 p.m., NALC's counsel sent defendants' counsel an unsigned version with red-line edits. The accompanying e-mail stated: "I haven't had a chance to revise but if you insist on filing tonight this will have to do and we'll deal with corrections before the hearing." Defendants' counsel reviewed that version, and at 5:38 p.m., e-mailed a signed version of the joint statement, with minor edits, to NALC's counsel for her signature. (Ostrem Decl. ¶ 13, Exs. M, N, and O.) After that, defendants' counsel did not hear from NALC's counsel until 9:18 p.m., when she asked what happened and stated that she

1  had had to leave for another meeting.  She subsequently wrote that she would try to get to a
2  computer, but that she was comfortable with what she had given defendants' counsel earlier that
3  afternoon.  Finally, at 9:55 p.m., NALC's counsel indicated that it was "simply too late in the
4  evening" to finish the joint statement, and suggested that defendants' counsel move the motion
5  date.  (Ostrem Decl. ¶ 13, Exs. P and Q.)  Consequently, defendants filed their own statement
6  regarding the discovery disagreement pursuant to E.D. Cal. L.R. 251(d).  (Ostrem Decl. ¶ 13.)
7  DISCUSSION

<u>E.D. Cal. L.R. 251 Meet-and-Confer Requirement</u>

Local Rule 251 provides, in part, that "a motion made pursuant to Fed. R. Civ. P. 26 through 37 ... shall not be heard unless (1) the parties have conferred and attempted to resolve their differences, and (2) the parties have set forth their differences and the bases therefor in a Joint Statement re Discovery Disagreement.  Counsel for all interested parties shall confer in advance of the filing of the motion or in advance of the hearing of the motion in a good faith effort to resolve the differences that are the subject of the motion."  E.D. Cal. L.R. 251(b).  If, however, one party fails to timely or meaningfully participate in the meet-and-confer efforts, the aggrieved party may file a declaration setting forth its version of the facts of non-compliance.  E.D. Cal. L.R. 251(d).

After reviewing the correspondence between the parties related to this discovery dispute, it is readily apparent that NALC's counsel failed to participate in a diligent manner in efforts to resolve the matter informally.  She significantly delayed responding to defendants' correspondence, resulting in discussions at the last hour, which are seldom productive in resolving a discovery dispute.  In her November 9, 2011 letter to defendants' counsel, NALC's counsel states:

> First, to address the throat clearing exercise and maintain a complete record: At no time has plaintiff refused or failed to meet and confer.  Our largest disagreements arise over whether defendants' counsel's unilateral, abrupt demands to respond may compel me to act in any particular fashion or order.  It is not a

5

> thing to take to the court.  However long we end up working with each other we will be reasonable and respectful of each other's personal and other professional commitments or not.  24 hours or less is never a reasonable demand for a response without blood or broken bones involved.  72 hours still needs some exigency beyond whim.  One week to 10 (business) days is civilized and courteous.

(Ostrem Decl. Ex. J.)  However, the correspondence does not reveal any abrupt or 24-hour demands by defendants' counsel.  To the contrary, defendants' counsel attempted to meet and confer with NALC's counsel well in advance of filing this motion, and gave NALC's counsel sufficient notice of the upcoming deadline to resolve the dispute or file a joint statement.  Contrary to NALC's counsel's contention, it is not reasonable to expect defendants to wait 10 business days for a response absent compelling circumstances.

With respect to the failure to file a joint statement, NALC's counsel seems to contend that she was comfortable with the version of the joint statement she sent to defendants' counsel around 4:51 p.m. on the day it was due, in essence suggesting that further delays were caused by defendants.  However, she did not sign the 4:51 p.m. version, and defendants' counsel still needed to review her latest proposed changes.  Accordingly, NALC's counsel could not reasonably have concluded that the joint statement was finalized at that time.  Nevertheless, NALC's counsel became unavailable until 9:18 p.m. the evening the joint statement was due and then claimed it was "too late" to finalize it.

Plaintiff's counsel's pattern of delaying until the last minute and failure to cooperate not only violated the letter and spirit of E.D. Cal. L.R. 251, but also significantly hindered informal resolution of this discovery dispute.  This behavior, combined with the fact that plaintiff's counsel failed to appear for the hearing, warrants an award of sanctions as discussed in greater detail below.

The court now turns to the merits of defendants' motion to compel supplementation of NALC's initial disclosures and further response to defendants' Interrogatory No. 1.

Initial Disclosures

Defendants contend that NALC's initial disclosures fail to provide addresses for witnesses, meaningful descriptions of the categories of knowledge of each witness, and meaningful descriptions of categories of documents.  Rule 26 of the Federal Rules of Civil Procedure provides, in part:

> (a) Required Disclosures.
> (1) Initial Disclosure.
> (A) *In General*.  Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties: (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information -- along with the subjects of that information -- that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment; (ii) a copy -- or a description by category or location -- of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;....

Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii).

Defendants argue that NALC failed to provide proper addresses for several witnesses identified pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i).  For those witnesses who are employees of NALC, NALC merely indicated that they may be contacted "through counsel, Weems Law Offices."  (Ostrem Decl. Ex. C.)  This does not appear to be improper, because a represented entity's employees may ordinarily only be contacted by the opposing party through counsel.  Thus, to the extent these identified witnesses have discoverable information, the appropriate contact information to provide under Fed. R. Civ. P. 26(a)(1)(A)(i) would be that of plaintiff's counsel.  However, defendants point out that a former employee, Tim Genrich, was also listed as to be contacted through plaintiff's counsel.  Clearly, NALC must supplement its initial disclosures to provide the appropriate contact information for Mr. Genrich, if known to NALC.  Defendants also complain that NALC provided no address for several other non-employee witnesses, including Jayson Pritchett, Steve Swedberg, and Dr. Scotti Lee.  When

7

1  NALC learns the contact information for these witnesses, it must supplement its initial
2  disclosures to provide that information.
3        Additionally, defendants argue that NALC fails to indicate which witness likely
4  has knowledge of which categories of information.  Indeed, NALC merely provides two long
5  lists of categories of information, each followed by a list of witnesses.  (Ostrem Decl. Ex. C.)
6  This frustrates the purpose of Fed. R. Civ. P. 26(a)(1)(A)(i), which requires disclosure of that
7  information to facilitate efficient discovery and depositions.  NALC must supplement its initial
8  disclosures to clearly indicate which witness likely has knowledge of which categories of
9  information.
10        Also, defendants contend that the categories of documents listed by plaintiff
11 pursuant to Fed. R. Civ. P. 26(a)(1)(A)(ii) are overbroad and vague.  NALC essentially lists the
12 following categories of documents: the pleadings filed in this action (including exhibits to
13 complaint and the Declaration of Kyle Read); "[b]usiness files for NALC (both electronic and
14 hard copy)"; "[b]usiness files for United Petroleum"; defendants' applications with
15 GoDaddy.com; defendants' applications with NetworkSolutions.com; and defendants'
16 applications with the Secretary of State, Arizona.  (Ostrem Decl. Ex. C.)  NALC's listing of
17 "business files for NALC" and "business files for United Petroleum" is wholly insufficient and
18 amounts to abuse of the discovery process.  Those terms are so broad as to be meaningless and
19 do not provide defendants with any notice as to which documents, or at least which categories of
20 documents, NALC may use to support its claims.  Presumably, NALC has investigated its claims
21 and is able to provide at least some categorical breakdown of the documents it intends to use in
22 this litigation.  Accordingly, NALC must supplement its disclosures by providing copies or a
23 "description by [specific] category and location" of all documents, electronically stored
24 information, and tangible things in its possession, custody, or control that it may use to support
25 its claims.  See Fed. R. Civ. P. 26(a)(1)(A)(ii).
26 \\\\

Response to Defendants' Interrogatory No. 1

Defendants claim that NALC's response to their Interrogatory No. 1, which requests NALC to identify the trade secrets defendants allegedly misappropriated, is too vague and generic. In particular, Interrogatory No. 1 requests that:

> For each TRADE SECRET that YOU contend any DEFENDANT MISAPPROPRIATED, as alleged in paragraphs 105-119 of the COMPLAINT, please DESCRIBE IN DETAIL the TRADE SECRET with sufficient particularity to separate it from matters of general knowledge in YOUR INDUSTRY or of special knowledge of those persons who are skilled in YOUR INDUSTRY.

(Ostrem Decl. Ex. A.)

Courts have observed that ordering "the listing of trade secrets at the outset of the litigation is a common requirement." Porous Media Corp. v. Midland Brake Inc., 187 F.R.D. 598, 600 (D. Min. 1999). Early identification of trade secrets serves four purposes: (1) "it promotes well-investigated claims and dissuades the filing of meritless trade secret complaints"; (2) "it prevents plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets"; (3) it "assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope"; and (4) "it enables defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation." Computer Economics, Inc. v. Gartner Group, Inc., 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999).[1] Trade secrets must be identified with reasonable particularity. See e.g. Struthers Scientific & Intern. Corp. v. General Foods Corp., 51 F.R.D. 149, 153 (D. Del. 1970) (plaintiff "should be required to

---

[1] Computer Economics, Inc. involved the applicability of Cal. Civ. Proc. Code § 2019(d). Computer Economics, Inc., 50 F. Supp. 2d at 984. Cal. Civ. Proc. Code § 2019(d) prevents a trade secret plaintiff from taking discovery until it specifically identifies the trade secrets it claims the defendant misappropriated. Id. Although the instant action does not involve Cal. Civ. Proc. Code § 2019(d), the court's rationale in Computer Economics, Inc. is nonetheless persuasive with respect to the need for reasonably specific identification of the claimed trade secrets in response to defendants' interrogatory at the outset of the litigation.

specifically describe what particular combination of components it has in mind, how these components are combined, and how they operate in a unique combination").

Here, NALC appears to have identified the following alleged trade secrets: NALC's customer database, the "Constant Contact" database (approximately 3,500 e-mail addresses of customers, suppliers, and prospects); the NALC "business model"; NALC marketing materials; and certain "downloaded files." Furthermore, NALC includes what appears to be a boilerplate list, including NALC's "customer lists, business plans, formula's [sic], patterns, compilations, programs, devices, methods, techniques or processes and other information that derived independent economic value...." (Ostrem Decl. Ex. A.)

Defendants acknowledge that NALC's response contains references to a few specific customers and documents, but argue that the trade secrets with respect to the "Constant Contact" database are not described in sufficient detail as called for by the interrogatory and its definitions. Defendants point out that they defined the term "DESCRIBE IN DETAIL" to seek specific information if the alleged trade secret is a customer list:

> If the alleged TRADE SECRET is information concerning a customer, vendor, or supplier, the phrase 'DESCRIBE IN DETAIL' means to state the name of the customer, vendor, or supplier as well as any other information concerning the customer, vendor, or supplier that YOU contend is YOUR TRADE SECRET (i.e., contact person, contact information, etc.).

(Dkt. No. 33, at p. 10.) The court notes that plaintiff has indicated its willingness to provide defendants with a copy of the "Constant Contact" database subject to the entry of a protective order. (Dkt. No. 36, at p. 4.) The court concludes that this would provide defendants with adequate notice of the trade secrets plaintiff claims with respect to the database at this early stage in the litigation. Given that the court signed the parties' stipulated protective order on November 16, 2011 (dkt. no. 35), plaintiff will be required to provide defendants with a copy of the "Constant Contact" database.

\\\\

1    With respect to the remainder of NALC's response, the court also finds that
2 greater detail is required.  Any NALC "business model," "business plan," and "marketing
3 materials," as well as any of the other "boilerplate" items must be described with particularity
4 (e.g. by author(s), date of creation, subject matter, basis for trade secret claim, etc.) or be
5 removed from the response to this interrogatory.  Voluminous files or items may be reasonably
6 categorized, but the descriptions must be sufficiently specific to notify defendants of the subject
7 matter and basis of the trade secret claims.

8    <u>Sanctions</u>

9    Defendants request sanctions in the amount of defendants' attorneys' fees related
10 to bringing this motion pursuant to Fed. R. Civ. P. 37(a)(5), which provides, in part, that if the
11 motion to compel is granted "the court must, after giving an opportunity to be heard, require the
12 party...whose conduct necessitated the motion, the party or attorney advising that conduct, or
13 both to pay the movant's reasonable expenses incurred in making the motion, including
14 attorneys' fees.  But the court must not order this payment if: (i) the movant filed the motion
15 before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the
16 opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other
17 circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A).

18    Not only were many of NALC's responses and disclosures insufficient, but NALC
19 also failed to confer diligently and in good faith with respect to the discovery dispute, and failed
20 to appear at the hearing on this motion.  Therefore, the court will award defendants their
21 reasonable attorneys' fees related to the meet-and-confer efforts and this motion.  According to
22 defendants' counsel, he spent at least 3 hours meeting and conferring with NALC's counsel
23 regarding the dispute and 2.5 hours preparing and revising defendants' statement regarding the
24 discovery disagreement, resulting in a total of 5.5 hours.  (Ostrem Decl. ¶ 14.)  He states that his
25 hourly billing rate for this action is $275.00 per hour.  (<u>Id.</u>)  The court finds the time spent and
26 \\\\

the billing rate to be reasonable, and accordingly awards defendants their attorneys' fees in the amount of $1512.50.

CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT:

1. Defendants' motion to compel (dkt. no. 31) is granted in part.

2. NALC shall file supplemental disclosures in accordance with this order within 21 days of the date of service of this order.

3. NALC shall provide defendants with a copy of the "Constant Contact" database (pursuant to the terms of the protective order) and file an amended response to defendants' Interrogatory No. 1 in accordance with this order within 21 days of the date of service of this order.

4. NALC shall reimburse defendants for their attorneys' fees related to the meet-and-confer efforts and this motion in the total amount of $1512.50, and payment shall be made within 21 days of the date of service of this order.

DATED: November 18, 2011

   /s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

GGH/wvr
NALC.1284.mtc.wpd