1
2
3
4
5
6
7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   NORTH AMERICAN LUBRICANTS
     COMPANY,
11

12              Plaintiff,                  No. CIV S-11-1284 KJM GGH

13        v.

14   SHANE A. TERRY, et al.,

15              Defendants.            ORDER
16   _____/

17              Presently before the court is defendants' motion to compel further initial

18   disclosures and further response to defendants' Interrogatory No. 1, which was filed on October

19   27, 2011 and came on regularly for hearing on November 17, 2011. (Dkt. No. 31.)

20              On November 10, 2011, for reasons discussed below, defendants filed their

21   statement regarding the discovery disagreement pursuant to E.D. Cal. L.R. 251(d).  (Dkt. No. 33.)

22   Plaintiff failed to meaningfully participate in the creation of the joint statement regarding the

23   discovery disagreement and failed to file its own timely statement.  Instead, plaintiff filed an

24   opposition brief and declaration six days after the joint statement was due (see E.D. Cal. L.R.

25   251(a)) and one day before the hearing on this matter.  (Dkt. No. 36.)  Accordingly, plaintiff's

26   opposition will be stricken and disregarded.

                                          1

1    At the hearing, Matthew Ruggles and Eric Ostrem appeared on behalf of

2 defendants.  Plaintiff's counsel failed to appear at the hearing.  Having reviewed the papers in

3 support of the motion and the court's record in this matter, and for good cause appearing, the

4 court now issues the following order.

5 BACKGROUND

6    Facts Giving Rise to the Litigation

7    The background facts are taken from the operative complaint filed on May 13,

8 2011.  (Dkt. No. 1.)  Plaintiff North American Lubricants Company ("NALC") is a manufacturer

9 and wholesale distributor of lubricating oils, primarily passenger car motor oil in the "do it for

10 me" market.  (See Complaint, Dkt. No. 1 ["Compl."] ¶ 31.)  NALC services its customers

11 through a network of authorized blenders, distributors and/or dealers of its products and services.

12 (Compl. ¶ 44.)  These customers market, sell, install, and maintain plaintiff's products for their

13 customers, but these entities may also market, sell, install, and maintain products manufactured

14 by plaintiff's competitors.  (Id.)

15    Defendant Shane Terry was the president of NALC from November 2005 until he

16 resigned on January 26, 2011 and formed a new company, defendant United Petroleum

17 Company, LLC ("UPC"), which offers products and/or services that compete with NALC.

18 (Compl. ¶¶ 8, 45, 45, 47, 49.)  At least two of NALC's former national account sales managers,

19 defendants Goldman and Hensing, also joined UPC in the first half of 2011.  (Compl. ¶¶ 10, 11.)

20 The remaining defendants are other executives, members, and/or directors of UPC.  (Compl. ¶¶

21 13-16.)

22    In this action, NALC alleges that defendants committed a variety of wrongful

23 conduct, including defendants Terry, Goldman, and Hensing accessing and transmitting NALC's

24 confidential information to one or more of defendants before leaving their employment with

25 NALC; soliciting NALC's employees and customers; using NALC's customer contact

26 information, customer account information, and sales and pricing data; and using logos,

2

advertising, and trade dress for UPC products that are confusingly similar to NALC's trademark and advertising.  (Compl. ¶¶ 47-48, 59, 99-101, 109, 116.)  NALC asserts the following causes of action: (1) violation of the Computer Fraud and Abuse Act; (2) violation of the Arizona Trade Secrets Act; (3) misappropriation/conversion; (4) breach of contract; (5) breach of implied covenant of good faith and fair dealing; (6) tortious interference with contract; (7) unfair competition (Lanham Act sections 32 and 43(A)); (8) unfair competition (common law); (9) unfair business practices; and (10) breach of fiduciary duty by corporate officers/managers. (Compl. ¶¶ 94-172.)

<u>Facts Related to the Discovery Dispute/Meet-and-Confer Efforts</u>

On October 27, 2011, defendants filed the instant motion to compel.  Defendants seek an order compelling NALC to supplement its initial disclosures and serve an amended response to Defendants' Interrogatory No. 1.  Defendants also request an award of sanctions in the amount of defendants' attorneys' fees related to bringing this motion.

The parties' meet-and-confer efforts were detailed in defendants' statement and the Declaration of Eric R. Ostrem.  (Dkt. Nos. 33, 34.)  After NALC served its response to defendants' Interrogatory No. 1 on October 4, 2011, defendants sent a detailed letter to NALC's counsel on October 13, 2011, explaining the alleged deficiencies in NALC's response and requesting that NALC amend its response.  (<u>See</u> Declaration of Eric R. Ostrem, Dkt. No. 34 ["Ostrem Decl."] ¶¶ 3-4, Ex. B.)  NALC did not respond to this letter.  (Ostrem Decl. ¶ 4.) Despite having agreed to exchange initial disclosures on September 28, 2011, NALC did not do so until October 21, 2011.  (Ostrem Decl. ¶¶ 5-6, Ex. C.)  After reviewing the disclosures, on October 24, 2011, defendants again sent NALC a detailed letter outlining the alleged deficiencies in the initial disclosures and requesting a response from NALC by close of business October 27, 2011 with respect to both the initial disclosures and Interrogatory No. 1.  (Ostrem Decl. ¶ 7, Ex. D.)  Defendants again received no response from NALC, prompting them to file a Notice of Motion to Compel after close of business on October 27, 2011.  (Ostrem Decl. ¶ 8.)

3

1          It was only after the motion to compel was noticed that NALC responded via e-

2   mail and a telephonic conference was scheduled for November 2, 2011.  (Ostrem Decl. ¶¶ 8-9,

3   Ex. E.)  During the phone conference, NALC's counsel agreed to review NALC's responses and

4   disclosures and get back to defendants regarding whether NALC would amend or supplement

5   them.  Defendants' counsel reminded NALC's counsel that the joint statement regarding the

6   discovery dispute was due on November 10, 2011.  (Ostrem Decl. ¶ 9, Ex. F.)  On November 7,

7   2011, after hearing nothing further from NALC's counsel, defendants e-mailed NALC's counsel

8   asking for a response and reminding her of the upcoming deadline.  (Ostrem Decl. ¶ 10, Ex. G.)

9   On November 8, 2011, defendants' counsel followed up with two phone calls, received no

10  answer, and left voicemails.  That evening, he sent NALC's counsel another e-mail, to which she

11  responded that she had been traveling and would respond the following day.  (Ostrem Decl. ¶ 11,

12  Exs. H and I.)

13         On November 9, 2011, NALC's counsel sent a letter to defendants' counsel at

14  4:17 p.m. outlining NALC's position on the discovery dispute.  Defendants' counsel then called

15  NALC's counsel, but the parties were unable to resolve their disagreement during the

16  teleconference or in the course of further e-mail correspondence.  (Ostrem Decl. ¶ 12, Exs. J, K,

17  and L.)

18         On November 10, 2011, the day the joint statement was due, the parties

19  exchanged early drafts of the joint statement.  Defendants' counsel had informed NALC's

20  counsel that he needed to leave the office at 6 p.m.  At 4:51 p.m., NALC's counsel sent

21  defendants' counsel an unsigned version with red-line edits.  The accompanying e-mail stated: "I

22  haven't had a chance to revise but if you insist on filing tonight this will have to do and we'll

23  deal with corrections before the hearing."  Defendants' counsel reviewed that version, and at

24  5:38 p.m., e-mailed a signed version of the joint statement, with minor edits, to NALC's counsel

25  for her signature.  (Ostrem Decl. ¶ 13, Exs. M, N, and O.)  After that, defendants' counsel did not

26  hear from NALC's counsel until 9:18 p.m., when she asked what happened and stated that she

4

1   had had to leave for another meeting.  She subsequently wrote that she would try to get to a

2   computer, but that she was comfortable with what she had given defendants' counsel earlier that

3   afternoon.  Finally, at 9:55 p.m., NALC's counsel indicated that it was "simply too late in the

4   evening" to finish the joint statement, and suggested that defendants' counsel move the motion

5   date.  (Ostrem Decl. ¶ 13, Exs. P and Q.)  Consequently, defendants filed their own statement

6   regarding the discovery disagreement pursuant to E.D. Cal. L.R. 251(d).  (Ostrem Decl. ¶ 13.)

7   DISCUSSION

8                         E.D. Cal. L.R. 251 Meet-and-Confer Requirement

9               Local Rule 251 provides, in part, that "a motion made pursuant to Fed. R. Civ. P.

10   26 through 37 ... shall not be heard unless (1) the parties have conferred and attempted to resolve

11   their differences, and (2) the parties have set forth their differences and the bases therefor in a

12   Joint Statement re Discovery Disagreement.  Counsel for all interested parties shall confer in

13   advance of the filing of the motion or in advance of the hearing of the motion in a good faith

14   effort to resolve the differences that are the subject of the motion."  E.D. Cal. L.R. 251(b).  If,

15   however, one party fails to timely or meaningfully participate in the meet-and-confer efforts, the

16   aggrieved party may file a declaration setting forth its version of the facts of non-compliance.

17   E.D. Cal. L.R. 251(d).

18               After reviewing the correspondence between the parties related to this discovery

19   dispute, it is readily apparent that NALC's counsel failed to participate in a diligent manner in

20   efforts to resolve the matter informally.  She significantly delayed responding to defendants'

21   correspondence, resulting in discussions at the last hour, which are seldom productive in

22   resolving a discovery dispute.  In her November 9, 2011 letter to defendants' counsel, NALC's

23   counsel states:

24                  First, to address the throat clearing exercise and maintain a
                    complete record: At no time has plaintiff refused or failed to meet
25                  and confer.  Our largest disagreements arise over whether
                    defendants' counsel's unilateral, abrupt demands to respond may
26                  compel me to act in any particular fashion or order.  It is not a

1    thing to take to the court.  However long we end up working with
each other we will be reasonable and respectful of each other's
2    personal and other professional commitments or not.  24 hours or
less is never a reasonable demand for a response without blood or
3    broken bones involved.  72 hours still needs some exigency beyond
whim.  One week to 10 (business) days is civilized and courteous.
4

5    (Ostrem Decl. Ex. J.)  However, the correspondence does not reveal any abrupt or 24-hour

6    demands by defendants' counsel.  To the contrary, defendants' counsel attempted to meet and

7    confer with NALC's counsel well in advance of filing this motion, and gave NALC's counsel

8    sufficient notice of the upcoming deadline to resolve the dispute or file a joint statement.

9    Contrary to NALC's counsel's contention, it is not reasonable to expect defendants to wait 10

10   business days for a response absent compelling circumstances.

11           With respect to the failure to file a joint statement, NALC's counsel seems to

12   contend that she was comfortable with the version of the joint statement she sent to defendants'

13   counsel around 4:51 p.m. on the day it was due, in essence suggesting that further delays were

14   caused by defendants.  However, she did not sign the 4:51 p.m. version, and defendants' counsel

15   still needed to review her latest proposed changes.  Accordingly, NALC's counsel could not

16   reasonably have concluded that the joint statement was finalized at that time.  Nevertheless,

17   NALC's counsel became unavailable until 9:18 p.m. the evening the joint statement was due and

18   then claimed it was "too late" to finalize it.

19           Plaintiff's counsel's pattern of delaying until the last minute and failure to

20   cooperate not only violated the letter and spirit of E.D. Cal. L.R. 251, but also significantly

21   hindered informal resolution of this discovery dispute.  This behavior, combined with the fact

22   that plaintiff's counsel failed to appear for the hearing, warrants an award of sanctions as

23   discussed in greater detail below.

24           The court now turns to the merits of defendants' motion to compel

25   supplementation of NALC's initial disclosures and further response to defendants' Interrogatory

26   No. 1.

1    <u>Initial Disclosures</u>

2        Defendants contend that NALC's initial disclosures fail to provide addresses for

3    witnesses, meaningful descriptions of the categories of knowledge of each witness, and

4    meaningful descriptions of categories of documents.  Rule 26 of the Federal Rules of Civil

5    Procedure provides, in part:

6            (a) Required Disclosures.
             (1) Initial Disclosure.
7            (A) *In General*.  Except as exempted by Rule 26(a)(1)(B) or as
             otherwise stipulated or ordered by the court, a party must, without
8            awaiting a discovery request, provide to the other parties: (i) the
             name and, if known, the address and telephone number of each
9            individual likely to have discoverable information -- along with the
             subjects of that information -- that the disclosing party may use to
10           support its claims or defenses, unless the use would be solely for
             impeachment; (ii) a copy -- or a description by category or location
11           -- of all documents, electronically stored information, and tangible
             things that the disclosing party has in its possession, custody, or
12           control and may use to support its claims or defenses, unless the
             use would be solely for impeachment;....

13

14   Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii).

15       Defendants argue that NALC failed to provide proper addresses for several

16   witnesses identified pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i).  For those witnesses who are

17   employees of NALC, NALC merely indicated that they may be contacted "through counsel,

18   Weems Law Offices."  (Ostrem Decl. Ex. C.)  This does not appear to be improper, because a

19   represented entity's employees may ordinarily only be contacted by the opposing party through

20   counsel.  Thus, to the extent these identified witnesses have discoverable information, the

21   appropriate contact information to provide under Fed. R. Civ. P. 26(a)(1)(A)(i) would be that of

22   plaintiff's counsel.  However, defendants point out that a former employee, Tim Genrich, was

23   also listed as to be contacted through plaintiff's counsel.  Clearly, NALC must supplement its

24   initial disclosures to provide the appropriate contact information for Mr. Genrich, if known to

25   NALC.  Defendants also complain that NALC provided no address for several other non-

26   employee witnesses, including Jayson Pritchett, Steve Swedberg, and Dr. Scotti Lee.  When

7

1  NALC learns the contact information for these witnesses, it must supplement its initial

2  disclosures to provide that information.

3          Additionally, defendants argue that NALC fails to indicate which witness likely

4  has knowledge of which categories of information.  Indeed, NALC merely provides two long

5  lists of categories of information, each followed by a list of witnesses.  (Ostrem Decl. Ex. C.)

6  This frustrates the purpose of Fed. R. Civ. P. 26(a)(1)(A)(i), which requires disclosure of that

7  information to facilitate efficient discovery and depositions.  NALC must supplement its initial

8  disclosures to clearly indicate which witness likely has knowledge of which categories of

9  information.

10         Also, defendants contend that the categories of documents listed by plaintiff

11  pursuant to Fed. R. Civ. P. 26(a)(1)(A)(ii) are overbroad and vague.  NALC essentially lists the

12  following categories of documents: the pleadings filed in this action (including exhibits to

13  complaint and the Declaration of Kyle Read); "[b]usiness files for NALC (both electronic and

14  hard copy)"; "[b]usiness files for United Petroleum"; defendants' applications with

15  GoDaddy.com; defendants' applications with NetworkSolutions.com; and defendants'

16  applications with the Secretary of State, Arizona.  (Ostrem Decl. Ex. C.)  NALC's listing of

17  "business files for NALC" and "business files for United Petroleum" is wholly insufficient and

18  amounts to abuse of the discovery process.  Those terms are so broad as to be meaningless and

19  do not provide defendants with any notice as to which documents, or at least which categories of

20  documents, NALC may use to support its claims.  Presumably, NALC has investigated its claims

21  and is able to provide at least some categorical breakdown of the documents it intends to use in

22  this litigation.  Accordingly, NALC must supplement its disclosures by providing copies or a

23  "description by [specific] category and location" of all documents, electronically stored

24  information, and tangible things in its possession, custody, or control that it may use to support

25  its claims.  See Fed. R. Civ. P. 26(a)(1)(A)(ii).

26  \\\\

8

1       <u>Response to Defendants' Interrogatory No. 1</u>

2               Defendants claim that NALC's response to their Interrogatory No. 1, which

3       requests NALC to identify the trade secrets defendants allegedly misappropriated, is too vague

4       and generic.  In particular, Interrogatory No. 1 requests that:

5                       For each TRADE SECRET that YOU contend any DEFENDANT
                        MISAPPROPRIATED, as alleged in paragraphs 105-119 of the
6                       COMPLAINT, please DESCRIBE IN DETAIL the TRADE
                        SECRET with sufficient particularity to separate it from matters of
7                       general knowledge in YOUR INDUSTRY or of special knowledge
                        of those persons who are skilled in YOUR INDUSTRY.

8

9       (Ostrem Decl. Ex. A.)

10              Courts have observed that ordering "the listing of trade secrets at the outset of the

11      litigation is a common requirement."  <u>Porous Media Corp. v. Midland Brake Inc.</u>, 187 F.R.D.

12      598, 600 (D. Min. 1999).  Early identification of trade secrets serves four purposes: (1) "it

13      promotes well-investigated claims and dissuades the filing of meritless trade secret complaints";

14      (2) "it prevents plaintiffs from using the discovery process as a means to obtain the defendant's

15      trade secrets"; (3) it "assists the court in framing the appropriate scope of discovery and in

16      determining whether plaintiff's discovery requests fall within that scope"; and (4) "it enables

17      defendants to form complete and well-reasoned defenses, ensuring that they need not wait until

18      the eve of trial to effectively defend against charges of trade secret misappropriation."  <u>Computer</u>

19      <u>Economics, Inc. v. Gartner Group, Inc.</u>, 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999).[1]  Trade secrets

20      must be identified with reasonable particularity.  <u>See</u> <u>e.g.</u> <u>Struthers Scientific & Intern. Corp. v.</u>

21      <u>General Foods Corp.</u>, 51 F.R.D. 149, 153 (D. Del. 1970) (plaintiff "should be required to

22

23              [1] <u>Computer Economics, Inc.</u> involved the applicability of Cal. Civ. Proc. Code § 2019(d).
        <u>Computer Economics, Inc.</u>, 50 F. Supp. 2d at 984.  Cal. Civ. Proc. Code § 2019(d) prevents a
24      trade secret plaintiff from taking discovery until it specifically identifies the trade secrets it
        claims the defendant misappropriated.  <u>Id.</u>  Although the instant action does not involve Cal. Civ.
25      Proc. Code § 2019(d), the court's rationale in <u>Computer Economics, Inc.</u> is nonetheless
        persuasive with respect to the need for reasonably specific identification of the claimed trade
26      secrets in response to defendants' interrogatory at the outset of the litigation.

1   specifically describe what particular combination of components it has in mind, how these

2   components are combined, and how they operate in a unique combination").

3            Here, NALC appears to have identified the following alleged trade secrets:

4   NALC's customer database, the "Constant Contact" database (approximately 3,500 e-mail

5   addresses of customers, suppliers, and prospects); the NALC "business model"; NALC

6   marketing materials; and certain "downloaded files."  Furthermore, NALC includes what appears

7   to be a boilerplate list, including NALC's "customer lists, business plans, formula's [sic],

8   patterns, compilations, programs, devices, methods, techniques or processes and other

9   information that derived independent economic value...."  (Ostrem Decl. Ex. A.)

10           Defendants acknowledge that NALC's response contains references to a few

11  specific customers and documents, but argue that the trade secrets with respect to the "Constant

12  Contact" database are not described in sufficient detail as called for by the interrogatory and its

13  definitions.  Defendants point out that they defined the term "DESCRIBE IN DETAIL" to seek

14  specific information if the alleged trade secret is a customer list:

15           If the alleged TRADE SECRET is information concerning a
             customer, vendor, or supplier, the phrase 'DESCRIBE IN
16           DETAIL' means to state the name of the customer, vendor, or
             supplier as well as any other information concerning the customer,
17           vendor, or supplier that YOU contend is YOUR TRADE SECRET
             (i.e., contact person, contact information, etc.).
18

19  (Dkt. No. 33, at p. 10.)  The court notes that plaintiff has indicated its willingness to provide

20  defendants with a copy of the "Constant Contact" database subject to the entry of a protective

21  order.  (Dkt. No. 36, at p. 4.)  The court concludes that this would provide defendants with

22  adequate notice of the trade secrets plaintiff claims with respect to the database at this early stage

23  in the litigation.  Given that the court signed the parties' stipulated protective order on November

24  16, 2011 (dkt. no. 35), plaintiff will be required to provide defendants with a copy of the

25  "Constant Contact" database.

26  \\\\

1    With respect to the remainder of NALC's response, the court also finds that

2    greater detail is required.  Any NALC "business model," "business plan," and "marketing

3    materials," as well as any of the other "boilerplate" items must be described with particularity

4    (e.g. by author(s), date of creation, subject matter, basis for trade secret claim, etc.) or be

5    removed from the response to this interrogatory.  Voluminous files or items may be reasonably

6    categorized, but the descriptions must be sufficiently specific to notify defendants of the subject

7    matter and basis of the trade secret claims.

8              Sanctions

9    Defendants request sanctions in the amount of defendants' attorneys' fees related

10   to bringing this motion pursuant to Fed. R. Civ. P. 37(a)(5), which provides, in part, that if the

11   motion to compel is granted "the court must, after giving an opportunity to be heard, require the

12   party...whose conduct necessitated the motion, the party or attorney advising that conduct, or

13   both to pay the movant's reasonable expenses incurred in making the motion, including

14   attorneys' fees.  But the court must not order this payment if: (i) the movant filed the motion

15   before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the

16   opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other

17   circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A).

18            Not only were many of NALC's responses and disclosures insufficient, but NALC

19   also failed to confer diligently and in good faith with respect to the discovery dispute, and failed

20   to appear at the hearing on this motion.  Therefore, the court will award defendants their

21   reasonable attorneys' fees related to the meet-and-confer efforts and this motion.  According to

22   defendants' counsel, he spent at least 3 hours meeting and conferring with NALC's counsel

23   regarding the dispute and 2.5 hours preparing and revising defendants' statement regarding the

24   discovery disagreement, resulting in a total of 5.5 hours.  (Ostrem Decl. ¶ 14.)  He states that his

25   hourly billing rate for this action is $275.00 per hour.  (Id.)  The court finds the time spent and

26   \\\\

1    the billing rate to be reasonable, and accordingly awards defendants their attorneys' fees in the

2    amount of $1512.50.

3    CONCLUSION

4            For the foregoing reasons, IT IS HEREBY ORDERED THAT:

5            1.   Defendants' motion to compel (dkt. no. 31) is granted in part.

6            2.   NALC shall file supplemental disclosures in accordance with this order within

7    21 days of the date of service of this order.

8            3.   NALC shall provide defendants with a copy of the "Constant Contact"

9    database (pursuant to the terms of the protective order) and file an amended response to

10   defendants' Interrogatory No. 1 in accordance with this order within 21 days of the date of

11   service of this order.

12           4.   NALC shall reimburse defendants for their attorneys' fees related to the meet-

13   and-confer efforts and this motion in the total amount of $1512.50, and payment shall be made

14   within 21 days of the date of service of this order.

15   DATED: November 18, 2011

16                                        /s/ Gregory G. Hollows
                                          UNITED STATES MAGISTRATE JUDGE
17

18

19   GGH/wvr
     NALC.1284.mtc.wpd
20

21

22

23

24

25

26