1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   NORTH AMERICAN LUBRICANTS
     COMPANY,
11
                      Plaintiff,                    Civ. No. 11-1284 KJM GGH
12          vs.

13   SHANE A. TERRY, et al.,                        ORDERS

14                    Defendants.
     _____/
15
            On July 13, 2011, the court heard argument on defendants' motion to dismiss for
16
     lack of jurisdiction and improper venue or, in the alternative, to transfer venue, and on plaintiff's
17
     motion to seal portions of its evidentiary showing in opposition to the motion.  Matthew J.
18
     Ruggles and Eric C.Ostrem of Littler Mendelson appeared for defendants; Robert C. Weems,
19
     Weems Law Office, appeared for plaintiff.  For the reasons set forth below, defendants' motion
20
     to dismiss is granted.  Plaintiff's motion to seal is denied but redaction is allowed.
21
     I.  THE COMPLAINT
22
            Plaintiff North American Lubricants Company (NALC) is a Delaware corporation
23
     with its principal place of business in Arizona; it is engaged in interstate commerce, including in
24
     this district.  Complaint (Compl.) ¶ 6.  Defendant United Petroleum Company, LLC (UPC) is an
25
     Arizona Limited Liability Company with headquarters in Scottsdale, Arizona; it, too, is engaged
26

                                              1

in interstate commerce.  *Id*. ¶ 7.  Defendant Shane Terry (S. Terry), an Arizona resident, was

President of NALC from November 2005 until January 26, 2011 and is founder, member and

President of UPC.  Defendant Michael Goldman was NALC's National Account Sales Manager

from February 2010 through May 6, 2011.  *Id*. ¶ 52.  He is currently Vice President of the

National Distribution Alliance for UPC.  *Id*. ¶ 10.  Defendant Gavin Hensing was NALC's

National Account Sales Manager from August 2008 through April 30, 2011 and is currently

UPC's Vice President of Business Development.  *Id*. ¶ 11.

       Defendant Claude Terry (C. Terry), a resident of California,[1] is Executive Vice

President of UPC.  *Id*. ¶ 13.  Defendant Paul Ormond, a member and director of UPC, is resident

of Ohio.  *Id*. ¶ 14.  Defendants Ralph H. Palmen and Gary O'Malley are members and directors

of UPC and are residents of Washington.  *Id*. ¶ 15-16.

       Plaintiffs allege violations of the Computer Fraud and Abuse Act, 18 U.S.C.

§ 1030; the Arizona Trade Secrets Act; misappropriation and conversion; breach of contract;

breach of implied covenant and good faith and fair dealing; tortious interference with contract;

unfair competition in violation of the Lanham Act, 15 U.S.C. §§ 1114(1)(a) & 1125(a); common

law unfair competition; unfair competition in violation of Cal. Civ. Code §§ 17200, et seq. and

the common law of Arizona; and breach of fiduciary duty by corporate officers and managers.

*Id*. ¶¶ 94-172.  All of these claims stem from the defendants' alleged violation of their agreement

to avoid conflicts of interest with NALC and use of NALC's proprietary materials after Terry,

Goldman and Hensing left NALC.

## II.  FACTUAL BACKGROUND

### A.  Threshold Evidentiary Issues

       Defendants argue that most of plaintiff's showing is based on inadmissable

evidence.  Reply, ECF No. 23 at 7.  A court may consider reliable hearsay for purposes of

---

[1]  Claude Terry's residency is disputed, as discussed below.

resolving questions of personal jurisdiction, though a plaintiff may not be able to meet its burden by relying on hearsay alone. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1562 (Fed. Cir. 1994); *Dejana v. Marine Technology, Inc.*, No. 1–CV–4029 (JS)(WDW), 2011 WL 4530012, at *3 (E.D.N.Y. Sep. 26, 2011); *JHRG LLC v. Stormwatch, Inc.*, No. 1:09CV919, 2011 WL 3111971, at *9 (M.D.N.C. Jul. 26, 2011); *but see Travelers Casualty & Surety Co. v. Telstar Construction Co.*, 252 F.Supp.2d 917, 923 (D. Ariz. 2003) (plaintiff must supply admissible evidence in support of its prima facie case). A court may properly consider jurisdictional facts taken from a defendant's marketing materials and other public documents, such as a defendant's website. *Agilent Technologies, Inc., v. Elan Microelectronics Corp.*, No. C-04-05385 JW, 2005 WL 3260162, at *3 (N.D. Cal. Nov. 29, 2005).

Based on these general principles, the court declines to consider those portions of the Amended Declaration of Kyle Read (Read Decl.), ECF No. 21, which describe a meeting between a "faithful NALC employee" and C. Terry, *id.* ¶ 17; provide information about C. Terry's pastoral activities in California, *id.* ¶ 12; claim "on information and belief" that Microsoft and Facebook maintain server farmers in California, *id.* ¶ 13; report on contacts between NALC customers and Goldman and Hensing, *id.* ¶ 15; and claim that S. Terry met with a NALC customer in Stockton and perhaps had contact with one or two other NALC customers. *Id.* ¶ 20. In addition, to the extent that allegations in the complaint are contradicted by defendants' affidavits, the court will not consider them in deciding the jurisdictional questions. *Compare, e.g.*, Compl. ¶ 52 (S. Terry "reported to the CEO and Board of NALC whose offices are in California, . . . and participated in numerous business activities in this district (including meetings with his CEO and Board of Directors) *with* Declaration of Shane Terry (S. Terry Decl.) ¶ 18 ("I met with the Board of Directors *zero* occasions in California between October 2005 and the date I left NALC. I met with Mr. Read, CEO from time to time (2 to 3 times a year) at his Pleasanton office for Oil Changers" (emphasis in original)).

/////

3

B.  <u>The Facts Of Record</u>

NALC is a Delaware corporation, which moved its headquarters from California to Arizona in 2006.  Compl. ¶ 6; S. Terry Decl. ¶ 8.  Several of its officers and its human resources operations are located in Pleasanton, California.  Read Decl. ¶ 5.  Hensing's and Goldman's last paychecks were issued from Pleasanton.  *Id*. ¶ 15.  NALC's computers and cell phones would be shipped to Pleasanton if there were severe problems.  *Id*. ¶ 6.  However, none of NALC's corporate functions - management, financial, marketing, administrative, or business operations - take place in California.  S. Terry Decl. ¶ 13.

Thirty-seven percent of NALC's sales by revenue come from California; the next highest sales volume is from Texas.  Read Decl. ¶ 18.[2]  NALC has a product supplier in California and ships products from Louisiana to California for storage.  *Id*. ¶ 19.  Its California supplier accounts for only a small percentage of NALC's product.  S. Terry Decl. ¶ 9.  All of NALC's distributor contacts and agreements, customer files and lists, and lubricant data are stored in Arizona.  *Id*.¶ 14.

When S. Terry worked for NALC, he traveled to California two to three times a year to meet with its CEO.  *Id*. ¶ 18.

Shortly before leaving his employment with NALC, S. Terry's production fell markedly, he downloaded files to a USB drive, accessed NALC's file customer/supplier/prospect email addresses, downloaded NALC's Automotive Oil Change Association Distribution list, and deleted both his email archive and his "my documents" folder in violation of company policy.  Read Decl. ¶¶ 8-11.  In addition, shortly before defendant Goldman left NALC, he plugged a USB drive into the system.  *Id*. ¶ 11.  The computers and cell phones that had been assigned to S.

---

[2]  S. Terry disputes the thirty-seven percent figure, claiming that outside of purchases by Oil Changers, a company owned by NALC CEO Larry Read, most of NALC's sales were made to purchasers outside of California and if sales to Oil Changers were included, only twenty-five percent of NALC's sales were directed to California.  S. Terry Decl. ¶ 15.  The court resolves this dispute in the affidavits in plaintiff's favor.

1   Terry, Goldman and Hensing were sent to California, apparently for forensic examination. *Id.*

2   ¶¶ 6-7.

3               UPC is an Arizona limited liability corporation with its headquarters and agent for

4   service of process in Arizona. *Id.*, Ex. A; S. Terry Decl. ¶ 23. All of UPC's operations are

5   conducted at its offices in Arizona, where all its employees work. S. Terry Decl. ¶¶ 23-24. The

6   printout from the Arizona Department of Corporations, updated on April 13, 2011, lists C. Terry

7   as one its managers and provides an address in Modesto, California. Read Decl. ¶ 12 & Ex. A.[3]

8   In addition, a credit application on behalf of UPC from S. Terry, dated April 19, 2011, lists C.

9   Terry as executive vice president with an address in Modesto. Read Decl. ¶ 12 & Ex. C.

10  Nevertheless, UPC is not registered to do business in California, has no agent for service of

11  process in California, and has obtained no licenses or other privileges from state or local

12  governments in California. S. Terry Decl. ¶ 22. UPC has no physical presence in California. *Id.*

13              After he left NALC, S. Terry had contacts with Dr. Arnold Shugarman, a

14  consultant who had provided technical advice to NALC. Compl. ¶¶ 40-41. UPC entered into a

15  contract with Shugarman's consulting firm on April 7, 2011, after S. Terry had left NALC; this

16  firm is located in Nevada. S. Terry Decl. ¶ 36. S. Terry had contacts with potential investors,

17  defendants O'Malley, Ormond and Palmen in February 2011, and met with Palmen, an Ohio

18  resident, in Palo Alto only because Ormond was there for a meeting of the Board of Trustees of

19  Stanford University. *Id.* ¶ 37.

20              S. Terry traveled to California on behalf of UPC in May 2011. He had a meeting

21  with in Stockton with a friend who was not a NALC customer, but it did not result in any

22  business for UPC. UPC has not made any sales to California-based companies. *Id.* ¶¶ 26, 29.

23  UPC has not marketed or advertised its products in any California market. *Id.* ¶ 29.

24

25              [3] S. Terry avers that this listing was "in error" because UPC's lawyers "mistakenly did
    not update Claude's address." Declaration of S. Terry in Reply (S. Terry Reply Decl.) ¶ 2. The

26  court resolves this dispute in the evidence in plaintiff's favor.

1    UPC maintains a passive website viewable in California and UPC and its

2  managers use social media.  Read Decl. ¶ 22 & Exs. D & E.  UPC used NALC's website

3  designer to develop its website.  *Id*. ¶ 22 & Ex. G.  This website designer is located in Arizona.

4  S. Terry Decl. ¶ 40.

5    C. Terry lived in Modesto, California but moved to Arizona in April 2011, where

6  he now lives and works.  He was living in Arizona when the instant complaint was filed, in May

7  2011.  Declaration of C. Terry (C. Terry Decl.) ¶¶ 2-3.  He owns property in Modesto, but that

8  property does not belong to UPC.  *Id*. ¶ 4.

9    Gavin Hensing has never worked or lived in California and does not own property

10  or maintain bank accounts there.  Declaration of Gavin Hensing (Hensing Decl.) ¶¶ 4-5.  He

11  lives and works in Arizona.  *Id*. ¶¶ 1, 3.  Michael Goldman lives and works in Arizona; has never

12  worked or lived in California; owns no property and engages in no business in California.

13  Declaration of Michael Goldman (Goldman Decl.) ¶¶ 3-5, 7.

14    UPC board member Palmen lives in Washington and has never lived or worked or

15  owned property in California.  Declaration of Ralph Palmen (Palmen Decl.) ¶¶ 3-4.  The UPC

16  Board of Directors has never conducted any meeting in California.  *Id*. ¶ 6.

17    UPC board member Ormond lives and works in Ohio and has not lived in

18  California since 1976.  Declaration of Paul Ormond (Ormond Decl.) ¶¶ 3-4.  Ormond's wife

19  owns, as trustee, a vacation home in La Quinta, which they visit on occasion.  *Id*. ¶ 4

20    UPC board member O'Malley lives in Washington, has never lived or worked in

21  California, and does not own property in California.  Declaration of Gary O'Malley (O'Malley

22  Decl.).

23  /////

24  /////

25  /////

26  /////

1   III.  LEGAL STANDARDS APPLICABLE TO MOTION TO DISMISS FOR LACK OF
2         PERSONAL JURISDICTION (FED. R. CIV.P. 12(b)(2))

3              The party seeking to invoke the federal court's jurisdiction bears the burden of

4   demonstrating jurisdiction. *Pebble Beach Company v. Caddy*, 453 F.3d 1151, 1154 (9th Cir.

5   2006); *Data Disc, Inc. v. Systems Technology Associates, Inc*., 557 F.2d 1280, 1285 (9th Cir.

6   1977).  When resolving a motion to dismiss under Rule 12(b)(2) on written materials, the court

7   accepts uncontroverted facts in the complaint as true and resolves conflicts in affidavits in

8   plaintiff's favor.  *Mavrix Photo*, 647 F.3d at 1223; *Doe v. Unocal Corporation*, 248 F.3d 915,

9   922 (9th Cir. 2001).  When there is a conflict between the complaint and an affidavit, plaintiff

10  cannot rely on the complaint to establish jurisdictional facts.  *Data Disc*, 557 F.2d at 1284.  In

11  addition, the court need not consider merely conclusory claims in the complaint as establishing

12  jurisdiction.  *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995); *China Technology*

13  *Global Corp. v. Fuller, Tubb, Pomeroy & Stokes*, No. C 05-1793, 2005 WL 1513153, at *3

14  (N.D. Cal. June 27, 2005).  If the court considers only written materials, plaintiff must show

15  facts, which if true, would establish personal jurisdiction over defendants.  *Mattel, Inc. v.*

16  *Greiner and Hausser GMBH*, 354 F.3d 857, 862 (9th Cir. 2003); *Data Disc*, 557 F.2d at 1285.

17

18             Questions of personal jurisdiction ultimately turn on concepts of due process.

19  When no federal statute authorizes personal jurisdiction, this court must apply California law.

20  As California's long arm statute is coextensive with federal due process requirements, the

21  jurisdictional analysis is the same.  *Mavrix Photo Inc. v. Brand Technologies* 647 F.3d 1218,

22  /////

23  /////

24  /////

25  /////

26  /////

1  1223 (9th Cir. 2011), *cert. denied,* ___ U.S. ___, 132 S.Ct. 1101 (2012); CAL. CODE CIV. P. §

2  410.10.

> A court may assert general jurisdiction over foreign (sister-state or
> foreign country) corporations to hear any and all claims against
> them when their affiliations with the State are so "continuous and
> systematic" as to render them essentially at home in the forum
> State.  Specific jurisdiction, on the other hand, depends on an
> "affiliatio[n] between the forum and the underlying controversy,"
> principally, activity or an occurrence that takes place in the forum
> State and is therefore subject to the State's regulation.  In contrast
> to general, all-purpose jurisdiction, specific jurisdiction is confined
> to adjudication of issues deriving from, or connected with, the very
> controversy that establishes jurisdiction.

9  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, ___U.S. ___, 131 S.Ct. 2846, 2851 (2011)

10  (internal citations omitted).

11        The standard for general jurisdiction is exacting and is satisfied only by a

12  showing of substantial operations in the state, marked by longevity, continuity, volume,

13  economic impact, physical presence, and integration into the state's markets.  *Mavrix Photo*, 647

14  F.3d at 1224; *Data Disc*, 557 F.2d at 1287.

15        The "constitutional touchstone" of specific jurisdiction is "whether the defendant

16  purposefully established 'minimum contacts' with forum state, so long as the plaintiff's claim

17  arose out of those contacts.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).  The

18  Ninth Circuit has devised a three-part test for analyzing claims of personal jurisdiction:

> (1) The non-resident defendant must *purposefully direct his
> activities* or consummate some transaction with the forum or
> resident thereof; *or* perform some act by which he *purposefully
> avails himself* of the privilege of conducting activities in the
> forum, thereby invoking the benefits and protects of its laws; (2)
> the claim must be one which arises out of or relates to defendant's
> forum-related activities; and (3) the exercise of jurisdiction must
> comport with fair play and substantial justice; i.e. it must be
> reasonable.

24  *Mavrix Photo*, 647 F.3d at 1227-28 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374

25  F.3d 797, 802 (9th Cir. 2004) (in turn quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)

26  (emphasis in original). The "purposeful direction" doctrine in turn relies on the "effects" test of

*Calder v. Jones*, 465 U.S. 783 (1984), which requires that "'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Mavrix Photo*, 647 F.3d at 1228 (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010)).

Generally, the "purposeful availment" analysis is used for cases sounding in contract while the "purposeful direction" analysis applies to cases sounding in tort. *Pebble Beach*, 453 F.3d at 1155; *see Richmond Technologies, Inc. v. Aumtech Business Solutions, Inc.*, No. 11-CV–02460 LHK, 2011 WL 2607158, at *4 (N.D. Cal. July 1, 2011) (applying the purposeful availment test exclusively when the tort claims arose out of the contractual relationship between the parties).

IV.  ANALYSIS

A.  General Jurisdiction

Although defendants specifically argue that there is no general jurisdiction over any of them, plaintiff mentions the concept only once in its points and authorities and then turns to the Ninth Circuit's three part test for specific jurisdiction. *Compare* ECF Nos. 7 at 16-20; ECF No. 17 at 13-14.[4] At argument on the motion, however, plaintiff suggested there might be general jurisdiction over some of the defendants.

Plaintiff has not borne its burden in the face of the pending motion.  There might be an argument that C. Terry is subject to this court's general jurisdiction based on his alleged residence in California; the evidence does show that as late as April 19, 2011, UPC and S. Terry claimed that C. Terry lived in Modesto, and C. Terry acknowledges that despite his move to Arizona, he still owns property in California.  C. Terry's uncontradicted declaration shows, however, that he no longer lives in California and has no intention of returning there to live. Plaintiffs have offered no other admissible information about the longevity and continuity of C.

---

[4] The court refers to the page numbers assigned by its ECF system.

1   Terry's contacts with California.  Plaintiff's showing that C. Terry lived in California for an

2   unknown length of time and still owns property in the state is insufficient to establish general

3   jurisdiction over him:

>   [T]he mere presence of property in a State does not establish a
>   sufficient relationship between the owner of the property and the
>   State to support the exercise of jurisdiction over an unrelated cause
>   of action.  The ownership of property in the State is *a* contact
>   between the defendant and the forum, and it may suggest the
>   presence of other ties.  Jurisdiction is lacking, however, unless
>   there are sufficient contacts to satisfy the fairness standard of
>   *International Shoe*.[5]

9   *Rush v. Savchuk*, 444 U.S. 320, 328 (1980) (citing *Shaffer v. Heitner*, 433 U.S. 186, 209 (1977))

10  (emphasis in original; citation omitted); *Golden Scorpio Corp. v. Steel Horse Saloon I*, No. CV-

11  08-1781 PHX-GMS, 2009 WL 976598, at *5 (D. Ariz. Apr. 9, 2009) (occasional visits to see

12  family and ownership of property in Arizona insufficient for general jurisdiction); *compare In re*

13  *Wireless Facilities, Inc. Derivative Litigation*, 562 F.Supp.2d 1098, 1103 (S.D. Cal. 2008)

14  (property ownership coupled with maintaining driver's license and checking account and visiting

15  more than twice a month enough sufficient for general jurisdiction).  None of the other

16  defendants has anything remotely approaching continuous and systematic contacts sufficient to

17  support the exercise of general jurisdiction.

18          Moreover, to the extent plaintiff suggests that S. Terry is subject to general

19  jurisdiction because of his former residence in California and his attempts to market UPC

20  products to California residents, it also has not borne its burden:  Even if plaintiff has offered

21  more than hearsay accounts, marketing to forum residents that does not result in substantial and

22  continuous contact with the forum does not support general jurisdiction.  *CollegeSource, Inc. v.*

23  *AcademyOne, Inc*., 653 F.3d 1066, 1075 (9th Cir. 2011).

24  /////

25

26          [5]  *International Shoe Co. v. State of Wash*., 326 U.S. 310 (1945).

10

B.  Specific Jurisdiction

Plaintiff's claims sound in both tort and contract and with respect to specific jurisdiction, plaintiff recites the tests for both purposeful availment and purposeful direction. Plaintiff then focuses on the purposeful direction analysis, without cleanly differentiating which analysis applies to which claim.[6] Plaintiff also lumps the defendants together, appearing to argue that sufficient contacts for one equate to specific contacts for all.  Under either analysis, it is plaintiff's burden to establish the first two prongs of the tests.  *Pebble Beach*, 453 F.3d at 1155.

1.  Plaintiff's Tort-Based Claims

Plaintiff alleges that defendants S. Terry, Goldman, and Hensing, all of whom were managers of NALC before they left to form UPC, accessed plaintiff's computer system in an unauthorized manner and appropriated NALC's confidential information[7], which they then used to target NALC's customers in Texas, Florida, California and Missouri, in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.  Compl. ¶¶ 64, 71, 77, 99, 100.

Plaintiff alleges that S. Terry, Goldman and Hensing had access to NALC's trade secrets and proprietary information and that thereafter UPC used NALC's oil blender rather than one of the larger blenders.  It also alleges that UPC, C. Terry, O'Malley, Palmen and Ormand were aware of the other defendants' improper access and have used the information improperly acquired.  Compl. ¶¶ 105-116.

In addition, plaintiff claims that UPC has misappropriated plaintiff's personal property by "exercis[ing] dominion and control over Plaintiff's confidential customer lists and account information," Compl. ¶¶ 120-125.  It also alleges a common-law unfair competition claim and an unfair business practices claim based on California Business and Professions Code

---

[6] Indeed, plaintiff does not suggest how its breach of contract claim, for example, fits into a purposeful direction, tort-based analysis.

[7] Even if the court relies on these conclusory allegations, plaintiff has not made a showing of sufficient contacts to establish jurisdiction.

§ 17200, et seq. and unidentified laws of Arizona, stemming from S. Terry's purported association with NALC even after he left to form UPC, and from UPC's use of NALC's trade secrets and customer lists.  Compl. ¶¶ 158-167.  Finally, plaintiff asserts Lanham Act claims, 15 U.S.C. §§ 1114(1)(a) & 1125(a)(1), based on UPC's use of marks that will cause confusion with NALC's products and that falsely suggests that UPC's products are connected with NALC's products.  Compl. ¶¶ 92-93.

If any of these acts occurred, they are intentional, but appear to have been undertaken in Arizona.  Plaintiff has not shown, however, that any of the alleged acts were expressly aimed at California; to satisfy this portion of the effects test, plaintiff must show that defendants' wrongful actions targeted a person whom defendants know to be a forum resident. *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1073-74 (9th Cir 2001); *Symantec Corp. v. Johns Creek Software, Inc*., No. C-11-03146 WHA, 2011 WL 4026873, at *3 (N.D. Cal. Sep. 12, 2011).  Acts with merely foreseeable effects in the forum state do not satisfy this portion of the effects test.  *Pebble Beach*, 453 F.3d at 1158.

As plaintiff is not a resident of California, it cannot show that defendants targeted California by their improper access to plaintiff's computer, use of NALC's trade secrets, and other improper acts.  To the extent that plaintiff argues defendants purposefully directed activities to California by its advertising and targeting NALC's California business, its argument is still unavailing.  Plaintiff has not shown that UPC's passive website specifically targets California consumers or that there is "something more" in addition to the website that directly targets this forum.  *Id*. at 1156 (passive website not sufficient); *compare Marvix Photo*, 647 F.3d at 1230 (website continuously and deliberately exploited plaintiff's California market; ran ads directed at California audience).  Plaintiff has not borne its burden of showing purposeful direction.

/////
/////

1               2. <u>Plaintiff's Contract-Based Claims</u>

2               Plaintiff alleges that S. Terry, Goldman and Hensing breached their contract not

3 to use or disclose NALC's trade secrets; breached the implied covenant of good faith and fair

4 dealing as the result of their appropriation of NALC's trade secrets, which prevented NALC

5 from receiving the benefit of its agreement with them; and breached their fiduciary duty to

6 NALC by entering into competition with NALC and failing to devote their full professional time

7 to NALC in the months before they left.[8]  Compl. ¶¶ 127-140, 168-172.  Plaintiff includes a

8 claim of tortious interference with contract against UPC, based on UPC's awareness that S.

9 Terry, Goldman and Hensing had agreed not to use NALC's proprietary materials or to solicit

10 NALC's customers and on UPC's solicitation of NALC employees to join UPC.  *Id.* ¶¶ 142-151.

11               In this case, the contracts forming the basis of these claims have nothing to do

12 with California: the parties entered into them in Arizona and any breach, if there was one,

13 occurred in Arizona.  Plaintiff has made absolutely no showing that defendants have

14 "purposefully availed [themselves] of the privilege of conducting activities in California" *Mattel,*

15 *Inc.*, 354 F.3d at 863, or "'performed some type of affirmative conduct which allows or promotes

16 the transaction of business within the forum state.'" *Doe*, 248 F.3d at 924 (quoting *Sher v.*

17 *Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990)).  To the extent plaintiff's claim rests on its

18 assertion that S. Terry met with NALC's customers in California, it has not supported that

19 contention, as noted above.  Plaintiff has made no showing that UPC or any of the individual

20 defendants invoked the protection of California's laws.  *Compare Richmond Technologies*, 2011

21 WL 2607158, at *7 (defendant reached out to form new business relationship with California

22 residents and organized new company under California law).  Plaintiff has not borne its burden

23 of demonstrating specific jurisdiction over any of its contract-based claims.

24

---

25        [8]  Under Arizona law, when a breach of fiduciary duty arises from a contractual
relationship, the action sounds in contract.  *Barmat v. John and Jane Doe Partners A-D*, 747
26 P.2d 1218, 1222 (1987).

V.  MOTION TO SEAL

The original declaration submitted by Kyle Read contains several customer names as well as a bank account number on S. Terry's credit application on behalf of UPC.  *See, e.g.,* ECF No. 21 ¶ 15 & Ex. C.  Plaintiff seeks to seal customer names in Read's declaration.  These names may be redacted, but the rest of the information concerning contacts is not otherwise subject to sealing.  *See U.S. ex rel. Westfall v. Axiom Worldwide, Inc.*, No. 806-CV-571-T-33TBM, 2008 WL 5341140, at \*4 (M.D. Fla. Dec. 19, 2008) (sealing customer names).  Plaintiff also asks to seal Exhibit C to Read's declaration, which is the credit application by S. Terry on UPC's behalf.  Any bank account numbers or other sensitive information in that document also should be redacted, without sealing of the entire document.

Defendants ask for sanctions based on disclosure of the bank account number and their efforts to respond to plaintiff's motion.  Although plaintiff's counsel's carelessness is troubling, the court does not find sanctions warranted; any future inattention to privacy, however, may be sanctioned.

IT IS THEREFORE ORDERED:

1.  Plaintiff's motion to seal (ECF No. 22) is denied but plaintiff is directed to file redacted documents in lieu of the original unredacted filings, in compliance with this order; and

2.  Defendants' motion to dismiss for lack of personal jurisdiction (ECF No. 6) is granted.

DATED:  March 31, 2012.

_____
UNITED STATES DISTRICT JUDGE